# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

**MANDY MEEKS-GALES,**

Plaintiff,

v.  CASE NO. 2:06-cv-2113

**JOHN POTTER, Postmaster General**,

Defendant.

## MEMORANDUM OPINION AND ORDER

This matter came for a non-jury trial on Plaintiff Mandy Meeks-Gales's complaint for retaliation, December 17-18, 2007. As witnesses to establish her complaint, Plaintiff presented her own testimony and the testimony of Coleen Davis (Davis), a co-worker. Defendant called Ada Binion (Binion), retired Manger Distribution Operations, and Reginald Douglas (Douglas), Supervisor. After hearing the testimony and weighing the credibility of the witnesses, the Court finds that Plaintiff has failed to establish the elements of a retaliation claim by a preponderance of the evidence.

## I.  FINDINGS OF FACT[1]

Plaintiff has been an employee of the United States Postal Service for approximately twelve years. On June 22, 2003, Plaintiff received a written notice that she was being suspended without pay for seven days for failing to be regular in her attendance. The memo was issued under the

---

[1] The Court has incorporated, in part, Defendant's proposed findings of fact. (Def.'s Proposed Findings of Facts and Conclusions of Law 1-4.)

1

signature of Plaintiff's immediate supervisor, Kevin Blackmon (Blackmon), and indicated that the concurring official was Binion. Under established union contract provisions Plaintiff filed a grievance objecting to the seven-day suspension. As a result of the grievance, the seven-day suspension was removed from Plaintiff's file. Neither Blackmon nor Binion participated in the grievance procedure. Copies of the memo were sent to "Step 2 & 3 files" and to Camilla Canaday. The "Step 2" grievance files are maintained by the Labor Relations Department of the Postal Service on labor grievances processed by Labor Relations, and "Step 3" grievance files are maintained by the Labor Relations Office for the Southeast Area Office of the Postal Service. Local supervisors did not maintain, nor have access to these files. Notice of the seven-day suspension was not presented to Binion.

On November 5, 2003, Plaintiff filed a formal complaint of discrimination alleging that the issuance of the seven-day suspension was discriminatory. Plaintiff and Binion participated in a mediation meeting on Plaintiff's initial complaint, though the complaint did not get resolved by the mediation. On or about March 5, 2004, Plaintiff filed a second formal complaint of discrimination alleging that it was discriminatory for Defendant to require her to work on Martin Luther King Day, while allowing at least one part-time flexible employee to have the holiday off work. Binion was named as the discriminating official in both complaints. A Final Agency Decision by the Postal Service was issued on October 7, 2004, in which Plaintiff's claims of discrimination were denied. The Final Agency Decision was affirmed by the Office of Federal Operations of the EEOC on June 20, 2005.

Effective April 17, 2004, Plaintiff sought and obtained a transfer to a work unit supervised by Douglas. Shortly thereafter, Douglas received an automated e-mail from the eRMS time and

attendance computer system used by the Postal Service advising him that Plaintiff had incurred several unscheduled absences potentially requiring corrective action. Douglas reviewed the time and attendance records and determined that from November 14, 2003 through February 23, 2004, Plaintiff had taken unscheduled leave on seven separate occasions totaling 101.54 hours. Douglas also reviewed the eRMS system and determined that Plaintiff had previously received a seven-day suspension for failing to be regular in her attendance. On May 13, 2004, Douglas conducted an investigative interview with Plaintiff for the purpose of learning if she had any explanation for the absences. Plaintiff advised Douglas that several of the absences should have been protected by the Family Medical Leave Act (FMLA). Plaintiff was unable to show that the scheduled absences were FMLA protected. Thereafter, Douglas submitted a Request for Disciplinary Action to his immediate supervisor, Binion, for her concurrence, proposing that Plaintiff be suspended without pay for a period of fourteen days. Attached to the Request for Discipline was documentation showing the unscheduled absences and evidence of the earlier seven-day suspension. Douglas was unable to verify that the seven-day suspension had been removed from Plaintiff's file. Under the policies and practices of the Postal Service, Binion, as the concurring official, signed off on the proposed discipline. The fourteen-day suspension letter was dated May 14, 2004. Based on these actions, Plaintiff alleged unlawful retaliation under Title VII.

## II. CONCLUSIONS OF LAW

42 U.S.C. § 2003e-3(a) provides that:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by [Title VII], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII].

To state a prima facie case of retaliation, Plaintiff must demonstrate: 1) she engaged in an activity protected by Title VII; 2) Defendant knew Plaintiff engaged in protected activity; 3) Defendant took an action adverse to Plaintiff; and 4) there was a causal connection between the protected activity and the adverse employment action. Wrenn v. Gould, 808 F.2d 493, 500 (6th Cir. 1987). Plaintiff presented evidence at trial to establish prongs one, two, and three of the prima facie case by a preponderance of the evidence. On the issue of causal connection, Plaintiff argues:

> But for the prior 7-day suspension, Gales would not have been subject to discipline as severe as a 14-day suspension at the time it was issued. When Gales was notified of the 14-day suspension, Gales informed her immediate supervisor, Reginald W. Douglas, of the terms of the Pre-Arbitration Settlement by which it was expressly agreed that the prior 7-day suspension could be used in no way in the future in connection with any other disciplinary proceedings. Despite this warning, Douglas proceeded with the 14-day suspension stating to Gales that if she was telling the truth, the new suspension would be overturned in the grievance process. Binion was presented with the 14-day suspension prepared by Reginald Douglass. Binion was aware of the 7-day suspension since she concurred and initialed Kevin Blackmon's suggested discipline. As a result of the plaintiff's grievance, the 7-day suspension was removed on January 9, 2004. The letter removing the 7-day suspension was placed in the plaintiff's personnel file and the file was kept in Ada Binion's office. In support of the Court's conclusion as to the state of mind of Ada Binion, Binion was involved in the unsuccessful mediation with the plaintiff in which Gales filed an EEO complaint against her. Testimony shows that Binion's attitude changed toward Gales after the plaintiff's 2003 grievance was filed. After that Binion showed animosity toward Gales and no one else. Out of over 100 employees, Ms. Gales was the only one Coleen [Davis] ever heard Ms. Binion complain about. Binion's behavior with respect to the plaintiff was so extreme it would make the plaintiff's supervisor, Kevin Blackmon, visibly uncomfortable. The letter warning issued to Gales meant that if she missed any more days, she could get a letter of removal. Reginald Douglas threatened her with as much. As a result, Gales could not get the necessary medical care for her daughter. Despite the fact that she informed Reginald Douglas that the 7[-]day suspension had been revoked he ignored her and she was forced to go through the 3 to 4 week grievance process to get the 14[-]day suspension rescinded. Gales's 14-day suspension was issued in retaliation for her prior EEO complaints and it constitutes an adverse employment action under Title VII.

(Pl.'s Proposed Findings of Facts and Conclusions of Law 2-3.)

Temporal proximity between the adverse action and the protected activity is not sufficient by itself to support an inference of retaliation when no other compelling evidence is presented.

4

Randolph v. Ohio Dept. of Youth Servs., 453 F.3d 724, 737 (6th Cir. 2006). In other words, the fact finder can consider the closeness in time between Plaintiff's protected activity and the adverse action in determining whether Plaintiff has established a claim for retaliation.

While Plaintiff has shown that the Postal Service knew that the earlier discipline had been rescinded, there is no showing that Douglas knew. Douglas testified that he received a computer generated report directing that Plaintiff should be disciplined. A review of the record before him did not reveal the resolution of the seven-day suspension. Arguably, when Plaintiff advised Douglas that it had been removed, that should have placed him on inquiry notice. Ideally, a supervisor would have taken the next step to investigate the claim, which did not happen. The Postal Service, through Douglas and Binion, was patently negligent in failing to undertake a further investigation, but negligence cannot form the basis for a Title VII retaliation claim.

Plaintiff presented the testimony of herself and Davis that Binion treated Plaintiff differently, and that Binion's attitude towards Plaintiff changed after Plaintiff filed her grievance. Binion denied this. Upon considering the testimony, the Court finds that Plaintiff's proof failed to establish that Binion treated Plaintiff with animus, that Binion treated Plaintiff more harshly than other workers, or that the Postal Service's stated reason for its actions against Plaintiff was not the true reasons. Davis's testimony was not credible in this issue, as it would have been difficult, if not impossible for Davis to have heard the things that she claims to have heard. Further, much of her testimony was conclusory opinion.

## III. CONCLUSION AND ORDER

Accordingly, the Court finds that Plaintiff has failed to establish each of the elements for her retaliation claim by a preponderance of the evidence. Judgment is entered for Defendant and Plaintiff's claim is dismissed.

**IT IS SO ORDERED** this 17th day of January, 2008.

s/Bernice Bouie Donald
BERNICE BOUIE DONALD
UNITED STATES DISTRICT COURT JUDGE
